STEERE *v.* TENNEY.

Authentication of records. Award.

If a State should go out of the Union, so as to stand in the relation of a foreign government for a time, yet, upon its return into the Union again, all judgments rendered while it was a foreign government must be authenticated in the same way as other State records.

The records of a foreign government are to be authenticated as such only during the existence of such foreign power.

Where the terms of a submission to referees are partly in writing and partly by parol, an award properly made in pursuance of all said terms will be good.

This case was tried by the court at the March trial term, 1868. The writ was dated Nov. 7, 1865. The action was debt on a judgment set up in the declaration as rendered by the common law and chancery court of the city of Memphis, Tennessee, Feb. 14, 1865, being one of the days of the February term of said court, for $3,901, and costs of the proceeding taxed at $7.75. Defendant pleaded *nul tiel record* (payment, and *nil debit*). The last two pleas were admitted upon the motion of defendant and against plaintiff's objection, as an amendment by the court, on the second day of the trial.

1. The plaintiff offered a copy of the record of said judgment, which is annexed, marked "A." To this the defendant objected, on the ground that it was not and did not purport to be a copy of a record of a common law judgment, nor of any judgment authorized by law, and because it was not duly authenticated; nor was the judge shown to have been legally appointed, nor was the court shown to have a legal existence. 2. In support of the record of the judgment in this

case, the plaintiff introduced the annexed paper, marked "B," which was admitted to be a correct transcript of the Tennessee code, as stated therein. Also referred to sundry statutes of the State of Tennessee. The court admitted the copy of the record of the judgment, for the purposes of this case, as *prima facie* evidence; to which the defendant excepted. 3. The defendant then proposed to show payment and satisfaction in full of plaintiff's claim. The court ruled that the parties might go behind the judgment, and introduce evidence as to the original claims and transactions on which the judgment was based. The defendant first proceeded to show payment, subject to plaintiff's objection. 4. The plaintiff testified that before the submission to W. B. Waldron and Stephen De Be Voice (a copy of which is a part of the record) was signed by the parties, the said parties both agreed that if these two disagreed they might choose a third arbitrator; that the two disagreed, and selected a third arbitrator, *i. e.*, A. P. Burdett, who signed the award together with the other two.

Plaintiff also testified: "Mr. Tenney and myself both went before the two arbitrator courts and submitted our claims to them. Our account and his agreed precisely, being the same produced here to-day by me, except $75.00 which Tenney said he had paid over to my brother I. The arbitrators disagreed as to the award. They so notified us. The arbitrators then selected A. P. Burdett as a third man. We then, on the same day, made our statements before the three arbitrators, submitting all matters to them as before. They made their award same day, and returned it into court same day, as I was informed."

The defendant objected to this testimony, so far as relates to the selection of the third arbitrator, as tending to vary and contradict the written paper and the record showing the submission and award, therefore incompetent, and thus the judgment thereon was unauthorized by law and invalid; but the evidence was received and objection overruled, subject to the exception of the defendant.

The defendant was examined in this case, and his evidence tended to contradict the plaintiff in many respects, both as to the submission and award, and as to the amount of payments made by him before the award was made; but he did not pretend that anything had been paid to plaintiff since the award, or since the judgment was rendered in Tennessee. The defendant, as a witness, was impeached; and there being no effort on his part to sustain his character for truth, the court therefore felt justified in laying his testimony out of the case, except where he was supported by other testimony from other sources.

The court rendered a verdict for the original amount of the Tennessee judgment, with interest thereon since its recovery in that State, in favor of the plaintiff,—a copy of which verdict makes a part of this case and is marked "C," which may be referred to, together with any other record used in the case.

The defendant now moves to set this verdict aside; also, in arrest of judgment, and for a new trial.

The questions of law were reserved.

A.

## STATE OF TENNESSEE, SHELBY COUNTY.

Proceedings had before the Hon. William M. Smith, judge of the common law and chancery court of the city of Memphis, sitting on the law side thereof, upon an award of arbitration filed in said court, at a term of said court began and held at the court-house in the city of Memphis, on the 13th day of February, 1865, the same being the second Monday in said February, between J. H. Steere and George H. Tenney.

---

## AGREEMENT.

We, George H. Tenney and J. H. Steere, do hereby agree to submit to W. B. Waldron, Stephen De Be Voice, for arbitration, the claim of said Steere against said Tenney for money borrowed, for which the said Steere holds the said Tenney's receipt, and obligation to pay, dated October 20th, 1863. And we hereby agree that the award in the above case shall be made to the common law and chancery court of the county of Shelby, city of Memphis, in the State of Tennessee ; and we hereby agree that said court shall render judgment on said award according to the tenor and effect thereof. The arbitrators above mentioned are to return their award to the clerk of said court within twenty days from this date : the same shall be sealed up and shall be opened by said clerk in term time of said court : then said court shall be fully authorized to render judgment thereon. And we do hereby bind ourselves, our heirs, and administrators and assigns, in the penal sum of seven thousand dollars, to abide the award of said arbitrators, and that we will each comply with the terms of said award.

In witness whereof, we have hereunto set our hands and seals this 19th day of December, A. D. 1864.

|  |  |  |
|---|---|---|
| (Signed) | GEORGE H. TENNEY, | Seal. |
| " | THOMAS CONNER, | " |
| " | JAMES H. STEERE, | " |
| " | C. KELSEY, security for J. H. STEERE. | " |

{ U. S. Revenue
Stamp 50 c.
duly cancelled. }

---

## AWARD.

We, the undersigned arbitrators, to whom was submitted for arbitration a certain receipt made by George H. Tenney unto James H. Steere for the sum of twenty thousand dollars, dated October 20, A. D. 1863, which receipt is hereto attached ;—the above, being the subject-matter of a suit, was submitted to us for arbitration by a written agreement, hereto attached, and signed by said George H. Tenney and said James H. Steere :—and now, on this 22d day December, A. D. 1864, after a full hearing of the above case and upon due deliberation, we do find and award that James H. Steere is entitled to have, and recover of

and from said George H. Tenney (as payment in full of the balance due on said receipt) the sum of thirty-nine hundred and one dollars ($3,901), with interest thereon at the rate of six per cent. from this date, and the cost of this arbitration.

In witness whereof, we have hereunto set our hands and seals this 22d day of December, A. D. 1864.

(Signed)                     W. B. WALDRON,       Seal.
"                            S. H. DE BE VOICE,     "
"                            A. P. BURDETT,         "
                                           *Arbitrators.*

Endorsed—Filed Feb. 14, 1865.

{ U. S. Revenue }
{ Stamp 50 c. }
{ duly cancelled. }

## RECEIPT.

Received, Memphis, October 20, 1863, of James H. Steere, fifteen thousand dollars, to pay for cotton jointly with George H. Tenney, for which he is to receive five thousand dollars bonus : the whole to be paid out of the proceeds of the first sale, say within two weeks.

(Signed)                              GEORGE H. TENNEY.

Be it remembered, that heretofore, to wit, on the 14th day of February, 1865, the same being one of the days of the February (1865) term of said court, the following judgment was rendered and entered of record, to wit : *James H. Steere* v. *George H. Tenney.* And now on this day this cause comes on to be heard upon the motion of Kelsey & Sharp, plaintiff's attorneys, for the adoption of the award herein, which motion is sustained by the court. Upon deliberation and due consideration, the court finds, from the award herein, that the plaintiff is entitled to have and recover of and from the defendant the sum of thirty-nine hundred and one dollars, and the costs of this proceeding. It is therefore considered by the court, that the plaintiff have and recover of and from the defendant the sum of thirty-nine hundred and one dollars, and the costs herein, and that execution issue.

## FIERI FACIAS.

STATE OF TENNESSEE.     *To the Sheriff of Shelby County*—GREETING.

You are hereby commanded that of the goods and chattels, lands and tenements, of George H. Tenney, if to be found in your county, you cause to be made the sum of thirty-nine hundred and one dollars, together with seven dollars and seventy-five cents costs, the fees hereon indorsed, which J. H. Steere, lately in the law side of the common law and chancery court of the city of Memphis, for the 5th, 13th, and 14th civil districts of Shelby county, at February term, 1865, recovered against him for debt and costs whereof the said defendant is convict,

as appears to us of record, and have you these moneys with interest until paid ready to render before the judge of said court, at a court to be holden for the 5th, 13th, and 14th civil districts in said county of Shelby, at the court-house, in the city of Memphis, on the second Monday in June next, to the said plaintiff for his debt and costs.

Herein fail not, and have you then and there this writ.

Witness, John Donovan, clerk of said court, at office, the second Monday in February, 1865.          JOHN DONOVAN, *Clerk,*

By GEO. I. CAMPBELL, *Deputy Clerk.*

Judgment the 14th day of February, 1865,.....:...........$3,901.00

BILL OF COSTS.

State tax,................................................$3.50

Clerk's fees, John Donovan :

Filing award of arbitrator,..................$ .25
Doc., .10 ; judgment, .75,....................  .85
Bill of costs, .50 ; copy, .25,................  .75
*Fi. fa.,* .40 ; enrolling, 2.00,............... 2.40
                                              ——   4.25
                                                      ——   $7.75

Endorsed. Issued 18th day of March, 1865. Came to hand 21st day of March, 1865. Judgment 14th day of February, 1865, $3,901. Costs, $7.75. Returned unsatisfied. No property to be found in my county.

June 12, 1865.                    P. M. WINTERS, *S. S. C.*

(An alias *fi. fa.,* issued August 16, 1865, which was returned with "no property," October 5, 1865 ; also a pluries *fi. fa.,* issued November 15, 1865, which was returned with "no property," February 10, 1866. Copies of which, and of the returns upon the same, were a part of the original record, but which are here omitted.)

STATE OF TENNESSEE—*Shelby County.*

I, John Donovan, clerk of the law court of Memphis (formerly the law side of the common law and chancery court of the city of Memphis), do certify that the foregoing (8) eight pages of writing contain a full, true, and perfect transcript of the record and proceedings had in said court in the case of J. H. Steere against G. H. Tenney, as the same appears on file and of record in my office.

In testimony whereof, I have hereunto set my hand and [L. S.] affixed the seal of said court, at office, the 12th day of April, 1867.                    JNO. DONOVAN, *Clerk.*

STATE OF TENNESSEE.

I, Thomas G. Smith, presiding judge of the law court of Memphis, duly commissioned and sworn according to law, do certify that John Donovan, whose genuine signature appears to the foregoing, is, and was at the time of signing the same, the clerk of said court, duly

elected and qualified according to law ; that full faith and credit are due all his official acts as such, and that his attestation is in due form of law.

Witness my hand, at Memphis, this 12th day of April, 1867.

THOS. G. SMITH, *Judge, &c.*          [L. S.]

STATE OF TENNESSEE—*Shelby County.*

I, John Donovan, clerk of the law court of Memphis, duly elected and qualified according to law, do certify that Thomas G. Smith, whose genu ine signature appears to the foregoing, is, and was at the time of signing the same, the presiding judge of said court, duly commissioned and qualified according to law.

[L. S.]          In testimony whereof, I have hereunto set my hand and affixed the seal of said court, at office, this 12th day of April, 1867.                              JNO. DONOVAN, *Clerk.*

---

B.

SEC. 3432. All causes of action, whether there be a suit pending therefor or not, may be submitted to the decision of one or more arbitrators, as hereinafter provided.

3433. The submission may be by any party in interest, or by an executor, administrator, guardian, trustee, or assignee for creditors, or it may be made by a trustee for a married woman, with her consent made in open court and entered of record, or by writing proved [upon] privy examination as in case of conveyance.

3434. The submission may be by written agreement, specifying what demands are to be submitted, the names of the arbitrators, and the court by which the judgment on their award is to be rendered.

3435. The submission may be of some particular matters or demands, or of all demands which one party has against the other, or of all mutual demands.

3436. The agreement may specify that the submission be entered of record in any court of law or equity, or, in cases within their jurisdiction, before a justice of the peace.

3437. On proof of such agreement, or by consent of parties in person or by counsel, it shall be entered in the proceedings of the court, or on the docket of the justice, and an order made that the parties submit to the award which shall be made in pursuance of such agreement.

3438. Upon such proof or consent the judge may, in vacation, make upon the agreement the order mentioned in the last section, and such order shall have the same force and effect as if made in term.

3439. No such submission shall be revocable after the agreement is signed by the parties, or entered of record, without leave of the court or justice, except by mutual consent entered of record.

3440. If the time within which the award is to be made is fixed in the submission, no award made after that time shall have any legal

effect, unless made upon a recommitment by the court; the court may, however, enlarge the time within which an award is to be made.

3441. If the time of filing the award is not fixed in the submission, it shall be filed within eight months from the time such submission is signed, unless by mutual consent the time is prolonged.

3442. The arbitrators shall give notice of the time and place of final hearing, which notice shall be served at least five days before the day of trial.

3443. In all submission cases, depositions may be taken to be used before the arbitrators, and witnesses may be summoned by subpœna, to be issued by the clerk of the court or justice as in other cases.

3444. These witnesses may be sworn by the arbitrator, and if guilty of false swearing, they are liable to all the penalties of perjury, as if sworn in court.

3445. Witnesses are also subject to all the penalties prescribed by law for failing to attend and give testimony in pursuance of the subpœna, as well as in damages to the party injured by their default, and, on the other hand, they are entitled to like privileges and like compensation as other witnesses. The forfeiture shall be enforced as provided in section 3825.

3446. The award shall be in writing, and should be delivered by one of the arbitrators to the court designated in the agreement, or it may be enclosed and sealed by them, and transmitted to the court, and not opened until the court orders.

3447. The cause will be entered on the docket, and called up and acted on in its order; but the court may require actual notice to be given either party, when it appears necessary and proper, before proceeding to act on the award.

3448. The award may be rejected by the court for any legal and sufficient reason, or it may be recommitted for a rehearing to the same, or any other arbitrators agreed upon by the parties.

3449. When the award is adopted, it is filed and entered on the record, and judgment will be rendered, and execution or other necessary process awarded, accordingly.

CODE OF TENNESSEE, pages 633–4. Prepared by Return J. Meigs and Wm. F. Cooper. Published by authority of the Legislature, 1858. Nashville, Tenn., E. G. Eastman & Co., State Printers.

---

## C.

### SUPREME JUDICIAL COURT.

Grafton, ss.                            Sept. Trial Term, A. D. 1869.

JAMES H. STEERE v. GEORGE H. TENNEY.

This action was, by the consent of the parties, tried by the court. The evidence in the case was placed before the court March term, A. D. 1868, with the exception of certain records which have since been furnished. At the last March term of this court the case was argued and submitted. And now, having examined and duly considered the evidence in the case, I find the several issues in this case in favor of

the plaintiff, and that defendant does owe the plaintiff the sum of five thousand and seventeen dollars and eighty-six cents.

Original judgment,.............................$3,909.55
Interest on judgment,.........................1,108.31
                                              _____
                                              $5,017.86

GEORGE W. NESMITH, *Presiding Justice*
at the March term, A. D. 1868.

*H. Hibbard*, for the defendant.

1. The judgment on which the action is founded was not rendered according to the rules of the common law, but solely by virtue of a local and peculiar statute of Tennessee,—not by a common law court, but by a tribunal having existence and jurisdiction only by virtue of such statute, and exercising jurisdiction in the peculiar modes which it prescribes, in a manner unknown to the rules and practice of the common law. The judgment is a mere creature of the statute, and has no force outside of the jurisdiction within which it was recovered.

No action can be maintained upon it elsewhere. *Dimick* v. *Brooks*, 21 Vt. 569 ; *Pickering* v. *Fisk*, 6 Vt. 102; *Wilson* v. *Rich*, 5 N. H. 455 ; *Flower* v. *Allen*, 5 Cow. 654 ;—*vide*, also, *Pierce* v. *Read*, 2 N. H. 359–363 ; 2 Bouv. Law Dict. 600, " Venue."

2. Tennessee, at the time of this proceeding, was not a State of the Union ; and a judgment rendered there must be regarded as a foreign judgment, with the incidents ordinarily attaching to such adjudications. It does not come within the provision of sec. 1, art. 4, of Const. U. S.; *Bissell* v. *Briggs*, 9 Mass. 462.

3. No action could be maintained upon this proceeding, even in Tennessee, because it appears by the record not to have been authorized by the statute relied upon in its support; nor according to the agreement of submission on which the award was to have been made.

The submission was to two persons designated as arbitrators. The award was made by those two persons, together with another whose name is not mentioned in the agreement of submission (page 463). It was not made in pursuance of the agreement. The Tennessee statute, sec. 3,437 (page 466), provides that the award " shall be made in pursuance of such agreement." The Tennessee court had no power to render a judgment upon such a proceeding. This is an irregularity into which it is the right and the duty of the court here to inquire whether this be regarded as a foreign judgment, or as the judgment of a sister State. *Bissell* v. *Briggs*, 9 Mass. 462 ; *Hall* v. *Williams*, 6 Pick. 232 ; *Gleason* v. *Dodd*, 4 Met. 333 ; *Thurber* v. *Blackbourne*, 1 N. H. 242 ; *Wilkinson* v. *Hall*, 6 Gray 568.

4. It would have been so even were this a domestic judgment; because the court, whether an inferior one or a court of general jurisdiction, would in such case have had power to proceed only in strict accordance with the provisions of the local statute, by virtue of which

alone it was then acting, and the irregularity, if it did not appear of record, might have been shown in defence by evidence *aliunde*. *Morse* v. *Presby*, 25 N. H. 299 ; *Eaton* v. *Badger*, 33 N. H. 228 ; *Russell* v. *Perry*, 14 N. H. 152. It is the same in this respect, when private individuals assume to act without legal authority, as when authorized tribunals or officers undertake to act in cases where their authority does not extend. *State* v. *Richmond*, 26 N. H. 232 ; *Griffin's Petition*, 27 N. H. 343 ; *Sanborn* v. *Fellows*, 22 N. H. 473.

5. It was not competent for the plaintiff to show that the parties agreed by parol to add to those named in the submission another arbitrator, who joined with the others in the hearing and in making the award, as the plaintiff was permitted to do, subject to the defendant's exception. An action cannot be maintained upon an award so made. The terms of the submission cannot be varied by parol evidence. *Furber* v. *Chamberlain*, 29 N. H. 405 ; *Dimick* v. *Brooks*, 21 Vt. 569 ; *George* v. *Farr*, 46 N. H. 171. In the case last cited this precise question seems to have been settled.

6. If these positions, or either of them, be correct, the verdict must be set aside, because the Tennessee judgment was received as evidence, both upon the plea of *nul tiel record* and the plea of *nil debit*.

*D. Blaisdell*, for the plaintiff.

I. The record is of a judgment rendered by a court of competent jurisdiction within the State of Tennessee, and having, as appears by the authentication in due form, a seal and clerk, is entitled to full faith and credit. Constitution of U. S., art. 4, sec. 1 ; U. S. Statutes at Large, vol. 1, p. 122, act of May 26, 1790 ; *Kittredge* v. *Emerson*, 15 N. H. 227. Where a court has jurisdiction, it has a right to decide every question which occurs in the cause ; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. *Elliott* v. *Peirsol*, 1 Peters 340—7 Curtis Sup. C. 608 ; *Thompson* v. *Tolmie*, 2 Peters 162—8 Curtis Sup. C. 62 ; *Voorhees* v. *Bank of U. S.*, 10 Peters 469—12 Curtis Sup. C. 193 ; *Mills* v. *Duryee*, 7 Cranch 483—2 Curtis Sup. C. 631 ; *Bissell* v. *Briggs*, 9 Mass. 462. In every instance in which a tribunal has decided upon a matter within its regular jurisdiction, its decision must be presumed proper, and is binding until it shall be regularly reversed by a superior authority. *Cocke* v. *Halsey*, 16 Peters 81. The presumption is, that the tribunal by which the judgment was rendered duly and fully considered all the questions arising upon the facts of the case, and in making up its judgment decided them according to the law of the State where the controversy was pending : nothing appearing to the contrary, the presumption will be that the court had jurisdiction. *Gleason* v. *Dodd*, 4 Met. 333.

II. The State of Tennessee is, and was on the 14th of February, 1865, one of the United States, enjoying all the guarantees of the constitution, and its legal tribunals entitled to the same faith and credit as those of the other States in the Union. The common law and chan-

cery court of the city of Memphis was one of those tribunals. Gov. Andrew Johnson's Proclamation, Jan. 26, 1864.

III. The parties agreed to make the submission, and that the award should be made and returned to the common law and chancery court of the city of Memphis, county of Shelby, Tennessee, and that said court should render judgment thereon according to the tenor and effect thereof. This appears by the record, and by the testimony produced on the trial here, and that the parties made that submission to the arbitrators, and the arbitrators made their award and returned it into the court, and that judgment was rendered thereon. The contract, which was the subject of submission, was executed at Memphis, and the agreement to submit, and the submission, were both made at the same place; and both parties having been there present, the defendant is not now at liberty to question the jurisdiction of the court. *Downer* v. *Shaw*, 22 N. H. 277; *Hall* v. *Williams*, 6 Pick. 232; *Gleason* v. *Dodd*, 4 Met. 333. The submission was made to two referees, and, as appears, another referee was afterwards added by parol, and signed the award with the first two. This award was returned into court, and judgment rendered thereon. The plaintiff submits that it was still the award of the two first appointed referees, and that the Tennessee court may well have so held. It was a question competent for that court to determine; and having considered and rendered judgment thereon, the question is not now to be reopened. The party objecting should have had the matter reconsidered by the court there, or taken appeal to a higher legal tribunal. Where a court of competent jurisdiction in a sister State has rendered judgment between parties properly before it, a court here will not reopen the case and vacate the judgment on account of any irregularity or construction of law different from that recognized here. The law recognized and acted on by the court of the State where the parties were then contesting their rights, will be held as the proper foundation of a judgment there rendered when a suit on a judgment is brought here. *Elliott* v. *Peirsol*, 1 Peters 340; *Hopkins* v. *Lee*, 6 Wheat. 110.

" It is a universal principle, that where power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, its exercise is confided to his or their discretion; the acts so done are binding and valid as to the subject-matter; and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only questions which can arise between an individual claiming a right under the acts done and the public, or any person denying its validity, are power in the officer, and fraud in the party. All other questions are settled by the decision made, as the act done by the tribunal or officer, whether executive, legislative, judicial, or special, unless an appeal is provided for, or other revision, by some appellate or supervisory tribunal, as prescribed by law." *United States* v. *Arredondo*, 6 Peters 729. The original contract was made in Memphis, Tenn.; the submission was made there; the parties appeared before the arbitrators there and presented their mutual claims; and the award was immediately returned

into the court, in pursuance of the agreement, and without objection. And upon these facts the plaintiff submits that the legal presumption, independent of the inference from the action of the court, is, that the defendant was, at the time of the judgment, abiding within the State of Tennessee, and within the jurisdiction of the court.

IV. The presiding judge on the trial here permitted the parties to go behind the Tennessee judgment, and introduce evidence as to the original claims and transactions on which that judgment was based, notwithstanding the plaintiff's objections, and, after a full hearing, rendered a verdict for the plaintiff for the amount of the Tennessee judgment with interest. This verdict, the plaintiff submits, should be sustained,—the original claims and transactions between the parties having been fully investigated and considered by the court, and no evidence introduced to invalidate the original judgment or to show payment.

SARGENT, J. The statute of the United States provides that " the records and judicial proceedings of the courts of any State shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form. And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from whence the said records are or shall be taken." Brightly's Dig., p. 265, sec. 9. Sec. 10, in same chapter, provides a way in which other public records may be authenticated, as follows : " All records and exemplifications of office books, which are or may be kept in any public office of any State, not pertaining to a court, shall be proved or admitted in any other court or office, in any other State, by the attestation of the keeper of the said records or books, and the seal of his office thereto annexed, if there be a seal, together with a certificate of the presiding justice of the court of the county or district, as the case may be, in which such office is or may be kept, or of the governor, the secretary of State, the chancellor, or the keeper of the great seal of the State, that the said attestation is in due form, and by the proper officer ; and the said certificate, if given by the presiding justice of a court, shall be further authenticated by the clerk or prothonotary of the said court, who shall certify under his hand and the seal of his office that the said presiding justice is duly commissioned and qualified ; or, if the said certificate be given by the governor, the secretary of State, the chancellor, or keeper of the great seal, it shall be under the great seal of the State in which the said certificate is made. And the said records and exemplifications, authenticated as aforesaid, shall have such faith and credit given to them in every court and office within the United States as they have by law or usage in the courts or offices of the States from whence the same are or shall be taken."

It will be seen, by comparing the certificates in this case with the above provisions, that the records are here authenticated in both the ways provided for above; and the authentication is sufficient if Tennessee was a State in the Union, one of the United States at the time; or if it was a territory, or in place of a territory, the same would hold true,—for, by sec. 11 of the same chapter, the preceding provisions are made applicable to territories as well as to States.

But it is said that Tennessee was not a State in the Union at the time this judgment was rendered, and therefore that the judgment must be considered and treated as a foreign judgment, the judgment of a foreign State, and must be authenticated by the great seal of such foreign State like other foreign records.

But let us examine this proposition. Conceding that Tennessee was a foreign State, a foreign government, at the date of the judgment, yet at the time these copies were obtained (April 12, 1867), and long before that time, that State was back in the Union again,—for she was represented in the U. S. senate by two senators in 1866, who, I think, were admitted in 1865, and also by members in the lower house of congress,—and the question arises, How shall copies of records, made while the State was a foreign State, be authenticated after the same State becomes a member of the Union—one of the United States? The foreign government has been overcome by force, or voluntarily given up and surrendered by the people, and superseded by a new government: how shall the records be authenticated in such case?

Take, for example, Texas: or suppose St. Domingo were annexed in some way to this country, and should afterwards become one of the States of this Union: how would its records be authenticated? that is, how would some old record, that was made while it was a foreign State, but which is to be used in one of our State courts after the same has been united to this nation and become one of the United States, need to be authenticated? As a foreign nation it has ceased to exist; its power is gone. Its courts no longer exist; its laws are no longer in force. It has and can have no seal to authenticate any record, nor any officer to keep or to use such seal. The old records remain as evidence of what was done under a former government, but the only way they could be authenticated would be by the proper officer, and by the seal of the new government which was in power at the time the authentication is made. The only authentication of the records of Texas that were made when it was a province of Mexico, and which were kept as provincial records, would now be by the officers and the seal of the present State of Texas.

But this point becomes immaterial here, because we find not only that Tennessee was a State in the Union at the time these copies were authenticated (April, 1867), about which there is no question, but also at the time the records were made (Feb'y, 1865).

Burnside's expedition through East Tennessee was accomplished in the fall of 1863 and early in 1864. Moore's Rebellion Record, vol. 7, pages 273, 407, and 501, Doc. Before this, Andrew Johnson had been appointed military governor of the State of Tennessee by the president

of the United States, and was issuing orders from the " executive office," Nashville, Tenn., as early as November 13, 1863.    Moore's Reb. Rec., vol. 8, p. 7, Diary.

On the 26th of January, 1864, said Johnson, as governor of said State, issued a proclamation in which he declares his belief " that a majority of the people of the State are ready and desire to return to their allegiance to the government of the United States, and to recognize and restore the State government to the exercise of its rightful functions as a State of the American union under the constitution of the United States," and his intention to open and hold an election in said State to fill the offices of justices of the peace, sheriffs, constables, trustees, circuit and county court clerks, registers, and tax collectors. He therefore orders an election of said officers in the various counties in said State, on the first Saturday in March (then) next (1864), and declares that it is for the purpose of bringing the State of Tennessee within the provisions of the constitution of the United States.

He then states that this election is ordered in the State of Tennessee as a State of the Union, under the federal constitution.    Moore's Reb. Rec., vol. 8, p. 340, Doc.

But there is some internal evidence connected with the records themselves, which indicates under what jurisdiction and authority the court was sitting.    The original written submission between the parties was stamped with a "U. S. revenue stamp," duly cancelled; the report of the arbitrators was stamped in the same way.    This would indicate that this business was done in a court recognizing the authority of the United States, and not in some foreign government. It will also be observed that the laws constituting this court, and prescribing the forms of business and the manner of trying causes, were published by authority of the legislature of the State of Tennessee in 1858, when Tennessee was a State of our American union.

The exceptions must, we think, be overruled.    There was all the evidence of the existence of a legal court and judges legally appointed which is required in any case.    The defendant certainly cannot complain that he was allowed to go behind the judgment, and put in evidence that the debt was never due and that it had been paid.    It becomes immaterial whether the plaintiff had reason to object or not to this part of the evidence, since the court has found against the defendant on all these issues.

The ruling admitting the judgment as *prima facie* evidence is in accordance with the holding in *Vogt* v. *Ticknor*, 48 N. H. 242.    But it was held that the same might be impeached; and if evidence was to be received, as it was received *aliunde*, to impeach the judgment, then evidence to sustain it must also be competent.    The evidence offered tended to explain the record rather than to impeach or contradict it, and was competent.    In *George* v. *Farr*, 46 N. H. 171, it is held that debt cannot be maintained on a *bond* given to secure the performance of an award of certain arbitrators therein named, where the parties afterwards substituted another and a different submission for the one specified in the bond.    But it is there held that a parol agreement

so substituted may be sufficient whereon to found an action of assumpsit. But where a submission was partly in writing and partly by parol, and an award was made by the referees in pursuance of the stipulations of both, we see no reason why assumpsit might not have been maintained upon the submission and award. But here judgment had been rendered upon the award, and this case was *debt* on that *judgment.* It would be no impeachment of a judgment to show that it was founded upon an award which was properly made upon a submission which was partly in writing and partly by parol.

Whether, at the time this judgment was rendered, the State of Tennessee was to all intents and purposes a State in the American union, becomes immaterial, since from the facts of history it is evident that it was held at that time in some way under the power and jurisdiction of the United States, and the copies are properly authenticated.

*Judgment on the verdict.*